UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 3:03-CR-57 JD |
| CRISS DUNCAN | |

**OPINION AND ORDER**

Defendant Criss Duncan has filed a motion with the Court seeking compassionate release or a modification of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Mr. Duncan is currently serving a 457-month term of imprisonment at FCI Sandstone on convictions related to a 2003 bank robbery. He has an expected release date of December 9, 2035. The Government opposes his motion. For the following reasons, the Court denies the motion.

**I.   Factual Background**

Mr. Duncan's 457-month term of imprisonment stems from his 2003 conviction on four counts related to his robbery of an Indiana bank with an accomplice, Ralph Berkey. (DE 189.) The robbery involved some unique circumstances. The two men wore camouflage fatigues, masks, and body armor during the robbery and carried assault-style rifles that had been modified from semi-automatic to fully automatic. *United States v. Duncan*, 479 F.3d 924, 925 (7th Cir. 2007). They stole $43,000 from the bank and initially used a van to flee the scene. They eventually changed vehicles by switching to a pickup truck and setting the van on fire to destroy evidence. *Id.* Then, as they were attempting to continue their flight in the pickup truck, they encountered a local chief of police at a roadblock. Mr. Berkey used one of the modified assault rifles to shoot at the police chief and keep the authorities from apprehending them. The two men then continued their flight into Michigan, where they remained for several days until police

found and arrested them. *Id.* at 925–26. Following their arrests, Mr. Berkey decided to enter a plea and Mr. Duncan decided to go to trial. *Id.* at 926. A jury convicted Mr. Duncan of bank robbery, using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A), aiding and abetting malicious damage to a vehicle, and being a felon in possession of a firearm. *Id.*

After his conviction, Mr. Duncan began an approximately two-year stretch of time where, because of various appeals and remands, he would be sentenced on those four counts three separate times.[1] At Mr. Duncan's first sentencing in 2004, the Court decided a 457-month term of imprisonment was appropriate, which would consist of a mandatory 360-month term for the § 924(c) conviction and 97 months, the low end of the 97 to 121-month guideline range, for the grouped remaining counts, with the terms of imprisonment to run consecutively. (DE 133.) The mandatory minimum sentence for Mr. Duncan's § 924(c) conviction would still be 360 months today. § 924(c)(1)(B)(ii). The Court remarked that the sentence was the longest it had imposed for a bank robbery and that it was "more than adequate" based on the underlying conduct. (DE 133.)

Mr. Duncan appealed that first sentence. (DE 135.) While the appeal was pending, the Supreme Court decided *United States v. Booker*, which rendered the sentencing guidelines advisory. 543 U.S. 220 (2005). The Seventh Circuit, in light of *Booker*, sent Mr. Duncan's case back to the Court on a limited remand to determine whether the Court would have imposed the same sentence if it knew the sentencing guidelines were only advisory. Instead of answering that narrow question, the Court chose to re-sentence Mr. Duncan to a new term of 360 months imprisonment on the four counts, finding the 360-month and 97-month terms of imprisonment

---

[1] Each of the prior sentences in Mr. Duncan's case were handed down by the late Honorable Judge Allen Sharp.

were still proper, but, contrary to applicable statutory requirements, choosing to run the terms concurrently instead of consecutively. (DE 167 at 6); § 924(c)(1)(D)(ii). The Seventh Circuit vacated the Court's new sentence for lack of jurisdiction but treated the Court's attempt to resentence Mr. Duncan as an indication that the Court would have ordered a different sentence if the guidelines had been advisory from the start. The Seventh Circuit thus remanded Mr. Duncan's case for purposes of a final resentencing.

The Court, in Mr. Duncan's third and final sentencing, returned to its original determination of 457 months imprisonment made up of the 360 months for the § 924(c) count and the 97 months for the remaining counts, with the terms to run consecutively. (DE 189 at 2–3.) In determining that the "original sentence imposed is the proper sentence" (*id.* at 2), the Court noted that the term of imprisonment tied to the § 924(c) count "addresses the *means* by which the defendant committed the crime" while the 97-month term was needed to ensure the sentence also reflected the "nature and manner of the offense" and "the seriousness of the offense" (*id.* at 12–13) (emphasis in original). The Court also explained that the prior sentence that would have had the 360- and 97-month terms run concurrently "was more lenient than the law permits," referring to the fact that a mandatory term of imprisonment imposed under § 924(c) must run consecutively with any terms of imprisonment on other counts. (*Id.* at 2); *see* § 924(c)(1)(D)(ii). Mr. Duncan has been serving the 457-month term of imprisonment that resulted from that third sentencing since the sentencing occurred in 2005.

Mr. Duncan, who was 43 when he committed the offenses, is now 62 years old and has developed several health problems while incarcerated. His prison medical records show that he has high cholesterol, early-stage glaucoma, degenerative disc disease, thrombocytopenia (low platelet count), and cirrhosis of the liver. He is also obese. (DE 295-1 at 46–51, 103; DE 295-2 at

22–24.) In addition to those conditions, Mr. Duncan contracted COVID-19 in September 2020 and recovered after reporting flu-like symptoms that lasted several days. (DE 295-1 at 134–36.) Mr. Duncan maintains he still suffers from what he believes are longer term effects of his COVID-19 infection, including respiratory difficulties, lightheadedness, and increased joint pain, but recent medical records do not confirm that those ailments are tied to COVID-19. (DE 295-1 at 47; DE 295-14; DE 298 at 4.) He has been fully vaccinated against COVID-19, having received his second dose of the Moderna vaccine in March 2021. (DE 295-1 at 157; DE 295-4.)

Mr. Duncan's requests for compassionate release or a sentence modification began around the time he became fully vaccinated. He initially requested relief through the administrative channel available to him by filing a request with the warden of his facility. (DE 295-14.) After the warden denied his request (DE 295-13), Mr. Duncan filed the instant motion with the Court. He based his request for relief on his personal characteristics, like his age, health, and susceptibility to COVID-19, as well as on what he believes is the overly punitive sentence he received during the third sentencing. (DE 279.) The Court referred Mr. Duncan's motion to the Federal Community Defenders Office to determine whether Mr. Duncan may qualify for assistance. (DE 283.) An attorney with the office filed a supplemental brief on Mr. Duncan's behalf (DE 290) as well as a reply (DE 298) to the Government's response in opposition to Mr. Duncan's request (DE 295).

## II.     Legal Standard

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant such a reduction," the reduction is consistent with policy statements issued by the Sentencing

Commission, and the defendant has submitted such a request to the warden at least 30 days before filing a motion or has fully exhausted all administrative rights within the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A).

If a defendant is found to have properly exhausted his administrative remedies, the Seventh Circuit instructs that a district court's analysis of a § 3582(c)(1)(A) motion should proceed in two steps. *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021). At step one, the court must determine whether the defendant has identified an extraordinary and compelling reason that warrants a potential sentence reduction. *Id.* The application notes to the Sentencing Guidelines offer some examples of when extraordinary and compelling reasons may be present, but they do not constrain the Court's discretion to find an extraordinary and compelling reason exists. *See* U.S.S.G. § 1B1.13; *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) (holding that U.S.S.G. § 1B1.13 does not constrain a court's § 3582(c)(1)(A) analysis but can act as a "working definition of extraordinary and compelling reasons" and be used as a guide to exercise that discretion). If the court finds the defendant has supplied an extraordinary and compelling reason, the court, exercising its discretion, must then, at step two, proceed to consider any applicable § 3553(a) factors as part of determining what sentencing reduction to award the defendant. *Thacker*, 4 F.4th at 576.

**III.    Discussion**

Mr. Duncan has raised two arguments in support of his motion. First, he argues that his age, health issues, and the risks from the COVID-19 pandemic create an extraordinary and compelling reason to grant him the relief he seeks. (DE 279 at 3.) Second, he argues that his current sentence is overly punitive given the Supreme Court's holding in *Dean v. United States* and the district court's pre-*Dean* comments and actions that showed a desire to sentence him to a

5

lesser term of imprisonment. (DE 279 at 6; DE 290 at 3–4.) Because Mr. Duncan unsuccessfully submitted a request to the warden of his facility at least 30 days before filing his motion with the Court, the Court reviews the merits of Mr. Duncan's arguments. (DE 295-13; DE 295-14.)

### A.     *Extraordinary and Compelling Reasons*

#### 1.     Health and COVID-19

The Court first addresses Mr. Duncan's argument that his current health concerns create an extraordinary and compelling reason for relief, particularly in light of the ongoing COVID-19 pandemic. The Court respectfully finds the relevant facts do not support Mr. Duncan's argument.

In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *United States v. Council*, 2020 WL 3097461, at *5 (N.D. Ind. June 11, 2020); *see also United States v. Melgarejo*, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020). In determining whether there is an extraordinary and compelling reason to modify a term of imprisonment, the Court may consider (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, (3) the age of the defendant, and (4) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See Council*, 2020 WL 3097461, at *5–7; *United States v. Barrett*, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic).

The Court first examines Mr. Duncan's age as its own potential reason to grant Mr. Duncan relief. Mr. Duncan is currently 62 years old. While that means he is at an age where the

risk of recidivism has begun to wane, Mr. Duncan's circumstances do not indicate that general trend is enough to qualify his age as an extraordinary and compelling reason for relief. Mr. Duncan was nearly 44 years old at the time he committed the offenses for which he is currently incarcerated, and he further chose to commit the offenses after having already served a twelve-year state prison term for a voluntary manslaughter conviction. Presentence Investigation Report at 2, 4, 10, United States v. Duncan, No. 0755-3:03-CR-57-2 (N.D. Ind. Mar. 15, 2004). Those circumstances suggest to the Court that Mr. Duncan is less likely to age out of dangerous criminal conduct than an average defendant.

Mr. Duncan's age in relation to his health and the COVID-19 pandemic also does not support relief. The Centers for Disease Control ("CDC") reports that the risk of severe illness from COVID-19 increases with age and that while the greatest risk of severe illness is among those aged 85 or older, adults aged 65 and older have an increased risk.[2] While Mr. Duncan is approaching the 65 and older age group, the Court notes he is several years from entering it. Additionally, while Mr. Duncan suffers from a range of health problems, including high cholesterol, early-stage glaucoma, degenerative cervical intervertebral disc, thrombocytopenia, cirrhosis of the liver, and obesity, the collective conditions do not warrant relief under § 3582(c)(1)(A) either on their own or in combination with other factors. (DE 279 at 3; DE 290 at 1; DE 295 at 7.)

Of Mr. Duncan's listed health concerns, the CDC recognizes liver disease, obesity, and potential heart issues as health conditions that can make an individual more likely to get severely ill from COVID-19.[3] Mr. Duncan's medical records confirm he suffers from those conditions,

---

[2] *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html, (last updated Dec. 14, 2021).
[3] *Id.*

but the records also indicate that all of Mr. Duncan's health conditions, both those on the CDC list and those not on the CDC list, appear to be stable and well controlled. (DE 295-1 at 46–51.) The Court specifically notes that while Mr. Duncan's medical records confirm he was diagnosed with cirrhosis in 2016, the cirrhosis was still considered "mild" as of March 2019 and that there is no medical evidence to suggest the condition has since worsened. (DE 295-1 at 47; DE 295-2 at 23). The Court additionally notes that Mr. Duncan's health conditions and age do not appear to impact his ability to engage in normal activities of daily living (DE 295-8; DE 295-9; DE 295-10; DE 295-11), that his prison medical records list his present care level as "healthy or simple chronic care" (DE 295-3), and that the records show his conditions did not appear to cause him to experience any particularly adverse effects when he previously contracted COVID-19 (DE 295-1 at 134–36). The Court thus finds little basis in Mr. Duncan's medical records to suggest that his health conditions, either in concert with or independent of his age and COVID, constitute an extraordinary and compelling reason that would justify relief.

Further weighing against granting Mr. Duncan's health-based argument for relief is the fact that he is now fully vaccinated against COVID-19. *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("Today, however, vaccines provide a much better defense against infection than any judicial order could do."). While the Court understands that Mr. Duncan is concerned that he is still vulnerable to the virus even after getting vaccinated (DE 279 at 3–4; DE 298 at 4), it finds no reason that Mr. Duncan is unable to benefit from the vaccine or that Mr. Duncan would be any safer from the virus outside of prison. *See Broadfield*, 5 F. 4th at 802 ("Vaccinated prisoners are not at greater risk of COVID-19 than other vaccinated persons.").

Finally, the Court notes that Mr. Duncan's current living situation within his facility does not warrant finding he is entitled to relief either. The available data indicates that the BOP has the virus well controlled, particularly in FCI Sandstone where Mr. Duncan is housed. The facility is currently reporting five positive inmate cases and no positive staff cases. It has also reported one inmate death from the virus since the beginning of the pandemic.[4] Additionally, 884 out of the 977 inmates housed within FCI Sandstone are fully vaccinated against the virus.[5] These numbers reflect the BOP's numerous precautions to help mitigate the spread of the virus and further support finding there are no COVID-19 related grounds on which to grant Mr. Duncan the relief he seeks. Given all these circumstances, the Court cannot find that Mr. Duncan's age, health, and risk of contracting COVID-19 warrant compassionate relief or a sentence reduction.

   2.   *Holding in* Dean

Having found no basis for relief because of the COVID-19 pandemic, his age, or his overall health, the Court next moves to consider Mr. Duncan's second argument, that the change in law following the Supreme Court's holding in *Dean v. United States* constitutes an extraordinary and compelling reason to grant him relief under § 3582(c)(1)(A). (DE 279 at 6; DE 290 at 3–4; DE 298 at 1–3.) *Dean* held that judges sentencing a defendant convicted of both § 924(c) and non-§ 924(c) offenses could consider the length of the mandatory minimum term of imprisonment for the § 924(c) convictions when deciding on an appropriate term of imprisonment for the non-§ 924(c) convictions. 137 S. Ct. 1170, 1176–77 (2017). The Seventh Circuit did not allow judges to exercise such discretion before *Dean*. *See United States v. Roberson*, 474 F.3d 432 (7th Cir. 2007). Mr. Duncan argues that if *Dean* had been decided

---

[4] *See Covid-19 Coronavirus*, Federal Bureau of Prison, https://www.bop.gov/coronavirus/, (last updated Jan. 11, 2022).
[5] *Id.*

before he was sentenced, the Court would have varied downward from the guideline, 97-month term it imposed for his three non-§ 924(c) counts of conviction. (DE 290 at 5.)

While similar *Dean*-based arguments have been raised in prior § 3582(c)(1)(A) motions around the country, the Court has not found, and Mr. Duncan has not provided, any cases that hold the *Dean* decision alone can constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A). Equally true, however, is that no court appears to have clearly dismissed the argument outright. Each court to consider the argument has instead taken case-specific approaches that often circumvented the ultimate question of whether *Dean* can support § 3582(c)(1)(A) relief. *See United States v. Scott*, 508 F. Supp. 3d 314, 316 (N.D. Ind. 2020), *aff'd*, 2021 WL 6098440 (7th Cir. Sept. 22, 2021); *United State v. Velazquez*, 2021 WL 2946404, at *4 (S.D. Ohio July 14, 2021); *United States v. Turner*, 2021 WL 684159, at *4–5 (S.D. Miss. Feb. 22, 2021), *aff'd*, 859 F. App'x 711 (5th Cir. 2021); *United States v. Ikegwuonu*, 2021 WL 719160, at *2–3 (W.D. Wis. Feb. 24, 2021); *United States v. Cook*, 2020 WL 7630622, at *4 (E.D. Wis. Dec. 22, 2020), *aff'd*, 850 F. App'x 457 (7th Cir. 2021). The Seventh Circuit has also not ruled on the issue, having only come as close as noting in one case that a defendant raised the argument at the district court level but did not maintain it on appeal. *Cook*, 850 F. App'x at 459. The Court is thus largely left to determine for itself whether a potential disparity between a pre- and post-*Dean* sentence can constitute an extraordinary and compelling reason to grant Mr. Duncan relief.

Courts within the Seventh Circuit have broad discretion in determining whether certain circumstances may qualify as an extraordinary and compelling reason for relief under § 3582(c)(1)(A). *Thacker*, 4 F.4th at 573. As previously noted, while courts are not bound by it, the Sentencing Commission's policy statement on § 3582(c)(1)(A), U.S.S.G. §1B1.13, can act as a

"working definition of extraordinary and compelling reasons" and guide their exercise of that discretion. *Gunn*, 980 F.3d at 1180. Using that broad discretion, and looking to § 1B1.13 solely for guidance, the Court finds that the holding in *Dean* does not amount to an extraordinary and compelling reason for § 3582(c)(1)(A) relief. Additionally, even if the Court could hold that *Dean* was a basis for relief, Mr. Duncan would fall short of showing he is entitled to relief.

The Court looks to the Seventh Circuit's recent decisions in *United States v. Black* and *Thacker* in support of those conclusions. Both *Black* and *Thacker* dealt with motions for compassionate release under § 3582(c)(1)(A) that touched on the potential impact that prior so-called "stacked" penalties under § 924(c) could have on the court's consideration of the motions. *United States v. Black*, 999 F.3d 1071 (7th Cir. 2021); *Thacker*, 4 F.4th 569. While the stacked penalty issue presented in those two cases is not exactly the same as Mr. Duncan's *Dean*-based issue, the underlying considerations about excessive sentences for both issues are somewhat similar.

The "stacked" penalties discussed in *Black* and *Thacker* refer to a sentencing enhancement under a prior version of § 924(c). Under that prior version, a defendant convicted of two or more § 924(c) offenses faced an enhanced, mandatory minimum sentence of 25 years imprisonment on the second or subsequent § 924(c) conviction that would run consecutive to all other sentences imposed, even if the § 924(c) convictions arose from the same case. *See Thacker*, 4 F.4th at 572. The First Step Act of 2018 amended the § 924(c) enhancement to only allow it to apply to a subsequent § 924(c) conviction when the first § 924(c) conviction arose from a separate case and became final before the subsequent conviction. *Id.* This change led to numerous § 3582(c)(1)(A) motions from defendants who believed they were serving excessive

11

sentences because they had received pre-First Step Act, stacked terms of imprisonment for multiple § 924(c) counts of conviction arising from the same case.

Circuit courts faced with appeals of these motions have split on whether the First Step Act amendment to § 924(c) can constitute an extraordinary and compelling reason for relief under § 3582(c)(1)(A). *See United States v. McCoy*, 981 F.3d 271, 285–87 (4th Cir. 2020) (finding an extraordinary and compelling circumstance); *United States v. Jarvis*, 999 F.3d 442 (6th Cir. 2021) (finding no extraordinary and compelling circumstance); *United States v. Loggins*, 966 F.3d 891, 892–93 (8th Cir. 2020) (finding no extraordinary and compelling circumstance). Those courts that have allowed prior stacked penalties and the excessive sentences they created to justify finding an extraordinary and compelling reason for relief have stated that such findings are not meant to be broad holdings allowing § 3582(c)(1)(A) relief for all allegedly excessive sentences, but instead are to be handled case-by-case and subject to the moving defendant's specific circumstances. *See McCoy*, 981 F.3d at 286–87; *see also United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021).

The Seventh Circuit, through *Black* and *Thacker*, firmly sided with those circuits that do not consider the First Step Act's § 924(c) amendment as an extraordinary and compelling reason for relief under § 3582(c)(1)(A). *Thacker*, 4 F.4th at 575–76. But because the Seventh Circuit's stance was only becoming clear as Mr. Duncan was briefing his §3582(c)(1)(A) motion, there appeared to be some justifiable confusion from Mr. Duncan about where the Seventh Circuit stood. Most striking is Mr. Duncan's argument in his briefing, based on *Black*, where he asserted that the Court "may consider changes in the law pertaining to § 924(c) as an extraordinary and compelling reason to justify compassionate release." (DE 290 at 6.) Not only does that purported statement of the law take a far broader view of *Black* than the actual opinion supports, but it also

contradicts the later holding in *Thacker*, decided after Mr. Duncan made the argument, in which the Seventh Circuit made clear that *Black* should not be read as stating the First Step Act's § 924(c) amendment is a basis for § 3582(c)(1)(A) relief. *Thacker*, 4 F.4th at 576. The Seventh Circuit instead clarified that the First Step Act amendment and a potentially excessive pre-First Step Act stacked sentence can only be considered along with relevant § 3553(a) factors to determine the extent of relief a defendant is due after a court has already found an independent extraordinary and compelling reason to award such relief. *Thacker*, 4 F.4th at 575–76 (citing *Black*, 999 F.3d at 1074–75). The Court thus finds Mr. Duncan's request for relief based on *Dean* is not as clear-cut as he argues and that the merits of such a request are best analyzed with guidance drawn from *Black* and *Thacker*.

While Mr. Duncan's *Dean*-based argument is not the same as a § 924(c) stacked penalty argument, the Seventh Circuit's reasoning supporting its decision in *Thacker* is nonetheless helpful. The Seventh Circuit's primary basis for finding that the First Step Act's § 924(c) amendment did not constitute an extraordinary and compelling reason for § 3582(c)(1)(A) relief was Congress' intent that the amendment only be applied prospectively. *Thacker*, 4 F.4th at 574 (holding that § 3582(c)(1)(A) "cannot be used to effect a sentencing reduction at odds with Congress's express determination embodied in § 403(b) of the First Step Act that the amendment to § 924(c)'s sentence structure apply only prospectively"). But the Seventh Circuit also supported its holding by expressing a worry that a decision holding that the amendment applied retroactively in compassionate release cases would differ from holdings about its application in other post-conviction cases and thus "allow the compassionate release statute to operate in a way that creates tension with . . . the specific statutory scheme authorizing post-conviction relief in 28

13

U.S.C. § 2255 and accompanying provisions." *Id.* The Court finds that similar considerations apply to Mr. Duncan's *Dean*-based compassionate release argument.

Although *Dean* differed from the First Step Act amendment in that it changed sentencing law through judicial opinion instead of congressional legislation, its change, like the First Step Act's, is not retroactively applicable on collateral review. *See Worman v. Entzel*, 953 F.3d 1004, 1010 (7th Cir. 2020); *Garcia v. United States*, 923 F.3d 1242, 1244 (9th Cir. 2019); *Beasley v. Werlich*, 2018 WL 3348961, at *2 (S.D. Ill. July 9, 2018) (collecting cases). While a § 3582(c)(1)(A) motion is not the same as a traditional motion for collateral review, to begin applying *Dean* retroactively for § 3582(c)(1)(A) motion purposes would represent a break from prior judicial holdings about the decision's prospective nature in a similar way that the Seventh Circuit in *Thacker* recognized that applying the § 924(c) amendment retroactively would break from the congressional intent that the amendment only have prospective effect.

Additionally, applying *Dean* retroactively in § 3582(c)(1)(A) motions would create the kind of tension between § 3582(c)(1)(A) motions and motions for collateral review that the Seventh Circuit already expressed concerns about in *Thacker*. 4 F.4th at 574. If the Court were to find, as Mr. Duncan urges, that the holding in *Dean* created an extraordinary and compelling reason for relief under § 3582(c)(1)(A), the Court would be allowing Mr. Duncan to benefit from a retroactive application of *Dean* to the sentencing judge's sentencing decisions that Mr. Duncan would not have been able to benefit from if he had instead filed a § 2255 motion seeking collateral review of his sentence. The differences and tensions such a holding would create would play right into the Seventh Circuit's concerns explained in *Thacker* and suggests that the holding in *Dean* cannot be considered an extraordinary and compelling reason for § 3582(c)(1)(A) relief. Therefore, the Court does not find that *Dean*, either independently or in

14

combination with other factors, supports Mr. Duncan's argument that he is entitled to compassionate release under § 3582(c)(1)(A).

However, the Court notes that even if it had found that *Dean* could create a basis for relief under § 3582(c)(1)(A), it would not find that *Dean* did create a basis for relief for Mr. Duncan specifically. Unlike the changes to § 924(c)'s stacking provision, which were clear changes to mandatory minimum sentences that judges were compelled to impose, *Dean* dealt with the more amorphous concept of a judge's discretion to sentence a defendant to a specific term of imprisonment based on a host of factors specific to that defendant. Thus, while it may be clear that a judge who is now required to impose a far shorter mandatory minimum § 924(c) sentence because of the First Step Act changes would choose to do so, it is not so clear, absent more specific evidence, how a judge given the additional discretion laid out in *Dean* would choose to use it. And here, Mr. Duncan has failed to show that the discretion provided in *Dean* would have led him to receive a substantively different sentence.

A comparison of cases is helpful to illustrate the point. The only case in the Seventh Circuit this Court has found in which *Dean* was cited positively as weighing in favor of relief under § 3582(c)(1)(A) is *United States v. Ikegwuonu*, a pre-*Black* and *Thacker* case that involved a defendant convicted of both § 924(c) and non-§ 924(c) counts. *Ikegwuonu*, 2021 WL 719160, at *2 (W.D. Wis. Feb. 24, 2021). The court in *Ikegwuonu* had previously made clear statements during its pre-*Dean* sentencing that it believed a lower sentence than the one it was imposing for the defendant's non-§ 924(c) convictions was warranted in light of the mandatory, consecutive § 924(c) sentence it was also imposing. The court also made clear that, despite its feeling that a lower sentence was appropriate, it felt bound by existing precedent at the time to not consider the

mandatory § 924(c) sentence as a reason to reduce the term imposed for the non-§ 924(c) convictions. *Ikegwuonu*, 2021 WL 719160 at *1.

Having made those prior clear statements, the court, upon receiving the defendant's post-*Dean* § 3582(c)(1)(A) motion, found that relief in the form of a reduced sentence was warranted in part based on the change in law after *Dean*. Even so, the court made clear in its order that the new discretion *Dean* allowed only played a supporting role. *Ikegwuonu*, 2021 WL 719160, at *3 (explaining that the change in law was "far" from "front of mind" in reaching the decision). The decision to grant § 3582(c)(1)(A) relief was primarily based on the court's finding that two deaths in the defendant's immediate family and his mother's pelvic cancer diagnosis created an extraordinary and compelling reason for relief on their own. 2021 WL 719160 at *2–3.

Comparing *Ikegwuonu* to the current case shows the circumstances underlying Mr. Duncan's sentencing are not nearly as clear as the circumstances in *Ikegwuonu* that led that court to find relief was warranted. Unlike the defendant in *Ikegwuonu*, Mr. Duncan has not pointed to any clear or unambiguous statements from the sentencing judge in his case that show the judge felt constrained by his pre-*Dean* inability to vary Mr. Duncan's sentence in light of the § 924(c) mandatory minimum. And the Court did not find any such statements when it reviewed Mr. Duncan's sentencing orders. The strongest evidence Mr. Duncan presented was his noting that the sentencing judge originally called the sentence "more than adequate" and then, during the second sentencing, attempted to have Mr. Duncan's § 924(c) and non-§ 924(c) convictions run concurrently, which would have substantially lessened Mr. Duncan's term of imprisonment. (DE 290 at 5.) Further, the judge, during the third sentencing, called the second sentence "more lenient than the law permits." (DE 189 at 2.)

In fairness to Mr. Duncan, the Court recognizes those statements and actions by the judge could be read to indicate some hesitancy about the sentence. But the Court finds that none of those statements show a hesitancy because of the discretionary constraints imposed in *Roberson* and that any hesitancy those statements and actions convey is outweighed by the judge's subsequent statements during Mr. Duncan's third and final sentencing. During that sentencing, the judge clearly returned to his original position that a 457-month sentence was correct. Upon closer examination, the judge's statement in the third sentencing order about the second sentence being "more lenient than the law permits" was less a statement about his desire to impose a shorter sentence and more an observation of fact that his decision to order the § 924(c) and non-§ 924(c) terms of imprisonment to run concurrently was precluded by § 924(c)(1)(D)(ii). (189 at 2–3.) The judge also made clear that he "ha[d] always been convinced that a ninety-seven (97) month term of imprisonment on [the non-§ 924(c) counts] was justified and correct" because it was necessary to ensure that a component of the sentence focused on the nature and manner of the non-§ 924(c) offenses and adequately reflected their seriousness. (DE 189 at 2, 10–14.)

Ultimately, the evidence, when taken together, does not indicate that *Dean* would have made a difference in Mr. Duncan's sentencing. The at best ambiguous evidence in this case differs from the clear evidence in *Ikegwuonu* and makes Mr. Duncan's case more similar to other cases from courts in the Seventh Circuit where defendants unsuccessfully raised *Dean*-based § 3582(c)(1)(A) arguments in the absence of prior, clear statements from the sentencing judges about being constrained by a lack of discretion to vary a non-§ 924(c) sentence. *See United States v. Davis*, 2021 WL 1561617, at *7 (E.D. Wis. Apr. 21, 2021); *Cook*, 2020 WL 7630622 at *4 ("[t]his case is not like Dean in which the sentencing court expressed reservation and concern in imposing a harsh sentence"). Thus, even assuming the *Dean* decision can constitute an

17

extraordinary and compelling reason for § 3582(c)(1)(A) relief, the Court cannot find that Mr. Duncan has shown that the discretion *Dean* afforded would have caused him to receive a sentence so different from the one he is serving as to qualify as an extraordinary and compelling reason for relief.

### B. §3553(a) Factors

The Court has not found an extraordinary and compelling reason to grant relief under § 3582(c)(1)(A), so its analysis of whether to grant Mr. Duncan's motion can stop here. *See Thacker*, 4 F.4th at 576. Nevertheless, the Court will go on to explain why, even if there had been an extraordinary and compelling reason to grant the motion, a consideration of relevant § 3553(a) factors would keep the Court from finding Mr. Duncan is entitled to the relief he is seeking. *See Ugbah*, 4 F. 4th at 598 (finding it is sufficient for a court to provide one reason adequate to support the denial of a motion under § 3582(c)(1)).

To start, there are several considerations weighing in favor of Mr. Duncan's request for relief that should be acknowledged. The Court agrees with Mr. Duncan that his advancing age and serious efforts at rehabilitation, including hundreds of hours of programming, a consistent job, full repayment of his court-ordered restitution, and only one disciplinary report that occurred seventeen years ago, tend to support finding he poses a reduced threat to society and has a lower likelihood of recidivating. (DE 279 at 4, 7; DE 279-1 at 22.) Mr. Duncan is to be commended for his accomplishments during rehabilitation, which reflect well on his desire to improve his life. But the Court notes that the weight his advancing age receives in the analysis must be mitigated somewhat by the fact, already discussed, that Mr. Duncan was nearly forty-four and had a history of violence when he committed the offenses for which he is currently imprisoned. Additionally,

for the reasons explained above, the Court does not find that Mr. Duncan's current health suggests a need for relief.

There are also numerous reasons directly weighing against § 3582(c)(1)(A) relief. Most glaringly, the nature and circumstances of Mr. Duncan's offenses were incredibly serious, involving the use of body armor and an assault weapon, modified to be fully automatic, to rob a bank. Mr. Duncan also made the decision to set a getaway vehicle on fire and engage in a confrontation that saw a chief of police fired upon with an automatic weapon. *Duncan*, 479 F.3d at 925–96. Additionally, Mr. Duncan had a history of violent offenses at the time he committed the robbery, having previously served a twelve-year state sentence for a voluntary manslaughter that he committed while on probation and that apparently did nothing to deter him from recidivating and endangering the public by committing the instant offenses. (DE 189 at 9.) While these events are now dated, their serious, violent nature does not convince the Court that Mr. Duncan no longer poses a threat to the public or that his sentence should be reduced.

The Court also finds nothing suspect about the sentence Mr. Duncan is serving or anything to suggest that it should be modified at this time, even given the new discretion laid out in *Dean*. First, 360 months of the 457-month sentence Mr. Duncan received came from the mandatory minimum term required for his § 924(c) conviction. (DE 290 at 6.) Mr. Duncan would be subject to the same mandatory minimum if he were sentenced today. § 924(c)(1)(B)(ii). He was only 70% of the way through serving that term at the time he filed his motion, which, given the length of the term, means he still has several more years to serve. Second, there is nothing problematic about the additional 97-month term Mr. Duncan was ordered to serve for his three non-§ 924(c) convictions. The guideline range for those three convictions, given Mr. Duncan's total offense level of 28 and criminal history of III (DE 189 at 9), would still be the 97

to 121-month period it was when he was originally sentenced. The fact that the sentencing judge chose the low end of that term cuts against a finding that the term was excessive. And even considering that *Dean* would have allowed some discretion to vary below the bottom of the range, the Court does not find that a reasoned consideration of relevant § 3553(a) factors, like the need to afford adequate deterrence and just punishment, would justify such a variance. The 97 months of additional time are necessary to account for Mr. Duncan's dangerous decisions to rob a bank, possess a machine gun as a felon, and set a getaway vehicle on fire, all of which were not accounted for in the § 924(c) mandatory minimum term.

The Court thus cannot find that the relevant § 3553(a) factors, even post-*Dean*, would lead a court to stray from the 97-month term in a way that would warrant granting Mr. Duncan relief. *See, e.g.*, *United States v. Starwalt*, 701 F. App'x 508 (7th Cir. 2017) (holding that a significant, mid-guideline non-§ 924(c) sentence paired with a mandatory, consecutive § 924(c) sentence was not subject to challenge post-*Dean*). Therefore, the Court cannot find, even if there had been a proper extraordinary and compelling reason to grant relief, that § 3582(c)(1)(A) relief would be appropriate for Mr. Duncan.

## IV. Conclusion

For those reasons, the Court DENIES Mr. Duncan's motion for compassionate release or reduction in sentence. (DE 279.)

SO ORDERED.

ENTERED: January 18, 2022

                                        /s/ JON E. DEGUILIO
                                        Chief Judge
                                        United States District Court