UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CRISS DUNCAN | Case No. 3:03-CR-57 JD |

**OPINION AND ORDER**

Criss Duncan is serving a 457-month sentence for robbing a bank, using a firearm during and in relation to a crime of violence, aiding and abetting malicious damage to a vehicle, and being a felon in possession of a firearm. With eleven years left to his sentence, he has moved (for the second time) for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). He claims that under a newly added subsection to the United States Sentencing Guidelines, § 1B1.13(b)(6), he should be released from prison or have his sentence reduced because it is grossly disparate with what it would be if he were sentenced now. The Government objects to his motion. For the reasons below, the Court will deny Mr. Duncan's motion.

**A. Background**

**(1)** *Offense Conduct*

On May 27, 2003, Mr. Duncan and his codefendant, Ralph Berkey Jr., robbed National City Bank in Leesburg, Indiana:

> In the course of the robbery, the two men wore camouflage fatigues, masks and body armor and carried assault-style rifles, which had been modified from semi-automatic to fully automatic by Berkey and another man. They fled the scene in a van with $43,000. Following their escape, Duncan and Berkey, still carrying their weapons, set fire to the van and changed vehicles to a pickup truck. When the two men encountered David Hobbs, the Milford, Indiana Chief of Police, at a roadblock, Berkey opened fire upon Hobbs. Duncan and Berkey then fled to Cassopolis,

> Michigan, where they hid in a wooded area, planning to resist violently any attempt to apprehend them. The authorities did not arrive. Duncan and Berkey then left the area, but subsequently returned to retrieve the money and weapons they had left in the pickup.
>
> Authorities eventually linked Duncan and Berkey to the robbery and assault upon Chief Hobbs and arrested the two men on May 31, 2003. Both were indicted in the Northern District of Indiana on a two count indictment charging bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A). Both men subsequently were charged with the attempted manslaughter of Chief Hobbs in state court.

*United States v. Duncan*, 479 F.3d 924, 925–26 (7th Cir. 2007).

**(2)** *Sentencing*

On December 8, 2003, following a five-day trial, the jury found Mr. Duncan guilty of bank robbery (18 U.S.C. §§ 2113(a) and (d)); using a firearm during and in relation to a crime of violence (18 U.S.C. § 924(c)(1)(A)); aiding and abetting malicious damage to a vehicle (18 U.S.C. §§ 844(i) and 2); and being a felon in possession of a firearm (18 U.S.C. § 922(g)(1)). (DE 116 & 118.)

The late U.S. District Judge Allen Sharp sentenced, and re-sentenced, Mr. Duncan three times. Originally, Judge Sharp sentenced him to 457 months of imprisonment, consisting of a low-end guideline sentence of 97 months, for his bank robbery, arson, and felon in possession convictions; and a consecutive mandatory minimum 360 months for the § 924(c) conviction because the firearm was a machinegun. (Ct. Sent. Memo, DE 133.) Mr. Duncan appealed his sentence, and while the appeal was pending, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), which deemed the sentencing guidelines advisory. In light of *Booker*, the Seventh Circuit ordered a limited remand to determine whether the district court would have

imposed the same sentence under the advisory guidelines. *United States v. Duncan*, 413 F.3d 680, 684 (7th Cir. 2005) (*Duncan I*).

On remand, rather than advising the Seventh Circuit whether he would have imposed the same sentence under the advisory guidelines, Judge Sharp modified Mr. Duncan's sentence, running the 360-month sentence for the § 924(c) conviction concurrently with the 97 months imposed for the other counts. (DE 167.) Again, an appeal followed with the Seventh Circuit deciding that "[t]he district court was without jurisdiction to re-sentence the defendant" because the Seventh Circuit had not relinquished its jurisdiction. *United States v. Duncan*, 427 F.3d 464, 465 (7th Cir. 2005) (*Duncan II*). Even so, the Court of Appeals considered Judge Sharp's attempt to re-sentence as an indication that he was "disposed to re-sentence" Mr. Duncan and remanded the case for that purpose. *Id*. at 465.

On December 7, 2005, Judge Sharp re-issued its original sentence of 457 months. (DE 189 at 12.) Judge Sharp found the facts of the case "troubling," and that this was an "atypical bank robbery" justifying "a higher than normal sentence" (*id.* at 13):

> In sum, this Defendant robbed a bank, burned the getaway van, and was armed with a fully automatic weapon while doing so. Additionally, he engaged in a close range shoot out with law enforcement. These facts are sufficient to convince this Court that the nature and circumstances of this offense—this bank robbery—make it unusual and justify the imposition of a harsh sentence.

(*Id*. at 13.)

Judge Sharp also explained that the prior sentence that would have imposed the 360- and 97-month terms to run concurrently "was more lenient than the law permits," referring to the fact that a mandatory term of imprisonment imposed under § 924(c) must run consecutively with any terms of imprisonment on other counts. (*Id*. at 2); *see* § 924(c)(1)(D)(ii).

3

Mr. Duncan was 43 when he committed the offenses. He is now 65 years old. He is scheduled for release eleven years from now, on December 9, 2035. *See* Federal Inmate Locator, https://www.bop.gov/inmateloc/ (last visited September 18, 2024).

**(3) *First Motion for Compassionate Release***

On April 22, 2021, Mr. Duncan moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).[1] (DE 279.) He argued that his age and health problems increased his vulnerability of contracting COVID-19. (*Id.* at 3.) He also argued that his sentence should be shortened in light of the Supreme Court's decision in *Dean v. United States*, 581 U.S. 62 (2017), "which held that a sentencing court may offset a statutory-minimum sentence under § 924(c) by adjusting the sentence for any other offense, allowing for the possibility of a lower overall sentence." *United States v. Duncan*, No. 22-1155, 2022 WL 4008717, at *1 (7th Cir. Sept. 2, 2022) (*Duncan III*). This Court denied Mr. Duncan's motion in all respects. Among other things, the Court relied on *United States v. Thacker*, 4 F.4th 569, 575 (7th Cir. 2021), to explain that a change in the law, such as the Supreme Court's decision in *Dean,* is not an extraordinary and compelling reason for reduction in sentence. The Court observed that § 3582(c)(1)(A)(i) cannot be used to achieve a statutory reduction at odds with Congress's intent that its anti-stacking amendment to the First Step Act only be applied prospectively. *Duncan III*, 2022 WL 4008717, at *1; (*see also* Op. & Order, DE 300). The Court also concluded that the § 3553(a) factors weighed against early release. (Op. & Order, DE 300 at 18–20.) Mr. Duncan appealed, and the Seventh Circuit affirmed. *Duncan III*, 2022 WL 4008717, at *2.

---

[1] As a result of Mr. Duncan's motion, this case was transferred to the undersigned.

4

**(4)  *Second (Instant) Motion for Compassionate Release***

Fourteen months after the Court of Appeals affirmed the Court's denial of Mr. Duncan's motion under § 3582(c)(1)(A)(i), he is again asking for compassionate release or reduction in sentence. This time he claims that he received an unusually long sentence, which under U.S.S.G. § 1B1.13(b)(6) constitutes an "extraordinary and compelling reason" for his release.[2] (Def.'s Mot., DE 312.) In support of his argument, Mr. Duncan relies on the Supreme Court's decisions in *Alleyne v. United States*, 570 U.S. 99 (2013), and *Borden v. United States*, 141 S.Ct. 1817 (2021). Also, as with the first motion, he once again invokes *Dean*, 137 S. Ct. 1170. (Def.'s Mot., DE 312 at 3–5.) As well, he argues that his "rehabilitation," when "considered in combination with other circumstances," warrants a reduction in his term of imprisonment. (*Id*. at 5.) The Government opposes Mr. Duncan's motion on the grounds that § 1B1.13(b)(6) is invalid and that there are no extraordinary and compelling reasons for his release.

**B.  Legal Standard**

A court generally cannot modify a sentence once the sentence has been imposed. 18 U.S.C. § 3582(c). However, an exception to that general rule allows a court to modify a sentence, after considering the factors under § 3553(a), if "extraordinary and compelling reasons warrant such a reduction," the reduction is consistent with policy statements issued by the Sentencing Commission, and the defendant has submitted such a request to the warden at least 30 days

---

[2] Section 1B1.13(b)(6) became effective on November 1, 2023, *see Amendments to the Sentencing Guidelines*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf ("As authorized by [28 U.S.C. § 994(p)], the Commission specifies an effective date of November 1, 2023, for these [amendments to the *Guidelines Manual*].") (last visited September 27, 2024), so this issue has not been previously addressed here or as part of Mr. Duncan's appeal to the Seventh Circuit.

before filing a motion or has fully exhausted all administrative rights within the BOP. 18 U.S.C. § 3582(c)(1)(A).

The analysis proceeds in two steps. *Thacker*, 4 F.4th at 576. At the first step the defendant must identify an extraordinary and compelling reason warranting a sentence reduction. *Id.* If the defendant establishes such a reason, the district court, in the discretion conferred by the statute, considers any applicable § 3553(a) factors as part of determining what, if any, reduction to award the defendant. *Id.* The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden. *United States v. Curren*, No. 3:20-cr-30165, 2023 U.S. Dist. LEXIS 90170, *5 (S.D. Ill. May 23, 2023) (citing *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021)).

The policy statements to the Sentencing Guidelines offer circumstances, or their combination, for the existence of extraordinary and compelling reasons. § 1B1.13. As relevant to Mr. Duncan's current motion, § 1B1.13(b)(6) provides that an unusually long sentence may be considered an extraordinary and compelling reason for an early release:

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

§ 1B1.13(b)(6).

Subsection (c) describes limitations on how changes in law can be considered:

> Limitation on Changes in Law.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons

6

> warrant a sentence reduction under this policy statement, Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

§ 1B1.13(c).

According to the Guidelines, the defendant's rehabilitation is not, by itself, an extraordinary and compelling reason:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

§ 1B1.13(d).

### C. Discussion

#### (1) *Compassionate Release Statute and U.S.S.G. § 1B1.13(b)(6): Background*

Before 1984, "[f]or almost a century, the Federal Government employed in criminal cases a system of indeterminate sentencing." *Tapia v. United States*, 564 U.S. 319, 323 (2011) (quoting *Mistretta v. United States*, 488 U.S. 361, 363 (1989)). Under this system, "trial judges exercised 'almost unfettered discretion' to select prison sentences for federal offenders." *Id.* (quoting *Mistretta*, 488 U.S. at 363)). This model of indeterminate sentencing eventually fell into disfavor because it produced serious sentencing disparities and failed to achieve rehabilitation of the offenders. *Id.* at 324.

> Congress accordingly enacted the Sentencing Reform Act of 1984, 98 Stat. 1987 (SRA or Act), to overhaul federal sentencing practices. The Act abandoned indeterminate sentencing and parole in favor of a system in which Sentencing Guidelines, promulgated by a new Sentencing Commission, would provide courts with "a range of determinate sentences for categories of offenses and defendants."

> And the Act further channeled judges' discretion by establishing a framework to govern their consideration and imposition of sentences.

*Id.*, 564 U.S. at 325 (quoting *Mistretta*, 488 U.S. at 368)).

Since the passage of the SRA, "[d]istrict courts have limited power to revisit sentences after they are imposed." *United States v. Goode*, 342 F.3d 741, 743 (7th Cir. 2003); 18 U.S.C. §3582(c). One such exception is afforded when "extraordinary and compelling reasons" warrant a reduction in sentence, § 3582(c)(1)(A)(i), but originally only the Director of the BOP could move for such a reduction. The Sentencing Commission was charged with promulgating "general policy statements regarding application of the guidelines or any other aspect of sentencing or sentence implementation that in the view of the Commission would further the purposes [of sentencing] including the appropriate use of . . . the sentence modification provisions set forth in section[] . . . 3582(c)." 28 U.S.C. § 994(a)(2). In addition, the Commission was tasked with describing "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In accordance with this directive, the Sentencing Commission promulgated U.S.S.G. § 1B1.13.

In 2018, Congress amended § 3582(c)(1)(A) as part of the First Step Act, ending the BOP's gatekeeping function and permitting individuals to move for a sentence reduction on the grounds of extraordinary and compelling reasons. Pub.L. 115-391, Title VI, § 603(b), Dec. 21, 2018. However, "[b]ecause the Commission lost its quorum in early 2019 and did not regain it until 2022, it was unable to amend § 1B1.13 during the more than four-year period since defendants were first permitted to file such motions." *Amendments to the Sentencing Guidelines*, 88 F.R. 28256 Note 2.

8

During this four-year period, § 1B1.13 was inapplicable to such motions because "the Guidelines Manual lack[ed] an "applicable" policy statement covering prisoner-initiated applications for compassionate release." *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020). Instead, district judges had to "operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review.'" *Id.* at 1181. But even then, the Seventh Circuit cautioned district judges not to veer too far from § 1.B1.13 and its Application Notes:

> The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive.

*Id*. at 1180.

As well, during this time the Seventh Circuit held in *Thacker* that nonretroactive statutory changes are not a valid basis for compassionate release. 4 F.4th at 575. In *Thacker*, the court considered the First Step Act amendment to § 924(c), examining "whether an inmate who was sentenced to so-called stacked penalties under 18 U.S.C. § 924(c) could request compassionate release after the First Step Act amended section 924(c) to limit the convictions that qualify as 'second or subsequent' to the crime of conviction." *United States v. Williams*, 65 F.4th 343, 346 (7th Cir. 2023) (quoting *Thacker*, 4 F.4th at 571; First Step Act § 402(a)). The court concluded that "the discretionary sentencing reduction authority conferred by § 3582(c)(1)(A) does not permit—without a district court finding some independent 'extraordinary or compelling' reason—the reduction of sentences lawfully imposed before the effective date of the First Step Act's amendment to § 924(c)." *Thacker*, 4 F.4th at 575. The court emphasized that "the discretionary authority conferred by § 3582(c)(1)(A) only goes so far" and "cannot be used to

9

effect a sentencing reduction at odds with Congress's express determination embodied in § 403(b) of the First Step Act that the amendments to § 924(c)'s sentencing structure apply only prospectively." *Id*. at 574. The court's holding interpreted the statutory phrase "extraordinary and compelling" reasons, *id*. at 573–74, concluding that the statute's clear meaning excludes non-retroactive changes in the law from contributing to a showing of extraordinary and compelling reasons. *Id*.

> After *Thacker*, the Seventh Circuit applied its principle to other settings:
>
> Our decisions in *United States v. Brock*[, 39 F.4th 462 (7th Cir. 2022)] and United States v. King[, 40 F.4th 594 (7th Cir. 2022)] applied the *Thacker* principle to other settings. In those cases, we considered whether inmates could base a request for compassionate release on the ground that they received statutory sentencing enhancements for which, after our decision in *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), they would no longer be eligible if sentenced today. Unlike in *Thacker*, this was not a situation in which Congress had spoken directly to the retroactivity question, but we reasoned that defendants should not be permitted to "circumvent the normal process for challenging potential sentencing errors, either through the direct appeal process or collaterally through a 28 U.S.C. § 2255 motion." *Brock*, 39 F.4th at 465 (quoting *Thacker*, 4 F.4th at 574). We held that "judges must not rely on non-retroactive statutory changes or new judicial decisions" when deciding whether an inmate has shown extraordinary and compelling reasons for relief. *King*, 40 F.4th at 595; *accord Brock*, 39 F.4th at 466.

*Williams*, 65 F.4th at 347.

The Sentencing Commission regained its quorum in 2022 and promulgated amendments to § 1B1.13, adding, among other things, subsection (b)(6). *See Amendments to the Sentencing Guidelines*, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf (last visited September 19, 2024). The Sentencing Commission submitted the amendments to Congress which took no action to modify or disapprove the changes, and they became effective on November 1, 2023. *See* 28 U.S.C. § 994(p) (providing that amendments to the guidelines become effective within 180 days of their

submission to Congress unless an Act of Congress modifies or disapproves them). In adding subsection (b)(6), the Sentencing Commission rejected *Thacker*:

> The text of the amended § 1B1.13 could not be clearer: The Commission has rejected *Thacker*'s holding that nonretroactive sentencing amendments, including to § 924(c), cannot constitute or contribute to extraordinary and compelling reasons to reduce a defendant's sentence under § 3582(c)(1)(A). The Commission's commentary accompanying its announcement of these revisions makes the point explicitly. *See* 85 Fed. Reg. 28254, 28258-59 (May 3, 2023) (noting the circuit split by citing cases including *King*, which applied the *Thacker* principle, and "agree[ing] with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction").

*United States v. Black*, No. 05-cr-70, 2024 U.S. Dist. LEXIS 20084, *10–11 (N.D. Ill. Feb. 6, 2024).

### (2) *Summary of the Parties' Arguments*

It is undisputed that Mr. Duncan has exhausted his administrative remedies, so the Court only needs to consider whether he established an extraordinary and compelling reason for compassionate release or reduction in sentence.

In his motion under § 3582(c)(1)(A)(i), Mr. Duncan claims that he has met all the requirements of § 1B1.13(b)(6) for showing an extraordinary and compelling reason justifying his release: he's received an unusually long sentence, has served at least 10 years of that sentence, and a change in law produced a gross disparity between the sentence being served and the sentence likely to be imposed now. He also cites his rehabilitation and individualized circumstances.

Mr. Duncan argues that his sentence is grossly disparate to a sentence he'd receive if he were sentenced today. He proposes three theories for this claim. First, Mr. Duncan points out that, at his sentencing, Judge Sharp found that he possessed a machinegun, thus subjecting him to

11

a 30-year minimum consecutive sentence for his § 924(c) violation. In 2013, however, the Supreme Court held in *Alleyne*, 570 U.S. 99, that any fact that increases the mandatory minimum sentence is an element of a criminal offense that must be admitted or found by a jury beyond reasonable doubt. Hence, Mr. Duncan argues that, without the jury determining that he possessed a machine gun, there's a gross disparity between the sentence he would receive today for violating § 924(c) (60 months) and the sentence imposed by Judge Sharp (360 months).

Next, Mr. Duncan insists that his sentence is grossly disparate because, when he was sentenced by Judge Sharp, the court could not consider the length of the mandatory minimum term of imprisonment for the § 924(c) conviction when deciding on an appropriate term of imprisonment for the non-§ 924(c) conviction. *Dean* changed that, *see* 137 S.Ct. at 1176–77, so Mr. Duncan argues that, if he were sentenced today, he would receive a much shorter sentence.

Finally, Mr. Duncan submits that his conviction under section "924(c) is arguably invalid under *Borden*" (Def.'s Br., DE 312 at 5), which held that a crime that could be committed with recklessness is not a crime of violence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Mr. Duncan submits that "bank robbery is a general intent crime," and "[w]ithout the 924(c) conviction, [his] sentence would be 97–121 months" (*id.*), instead of 457 months.

In its response, the Government argues that there are no extraordinary and compelling reasons for Mr. Duncan's early release. The Government submits that § 1B1.13(b)(6) contradicts the text, structure, and purpose of § 3582(c)(1)(A) and is contrary to *Thacker*, 4 F.4th 569; as such, subsection (b)(6) is invalid. But even if this subsection were valid, the Government argues that Mr. Duncan cannot show that the sentence he received is unusually long or grossly disparate to the sentence he might receive today. Lastly, the Government argues that, regardless, consideration of the § 3553(a) factors precludes relief.

### (3) *Section 1B1.13(b)(6) is Unavailable to Mr. Duncan*

There's no argument between Mr. Duncan and the Government that he relies upon subsection (b)(6), which allows under certain conditions to consider nonretroactive changes in the law as an extraordinary and compelling basis for relief from an unusually long sentence. That said, the Court agrees with the Government that the Sentencing Commission exceeded its authority in implementing this subsection. In *Thacker*, the Seventh Circuit held that "the discretionary sentencing reduction authority conferred by § 3582(c)(1)(A) does not permit—without a district court finding of some independent "extraordinary or compelling' reason—the reduction of sentences lawfully imposed before the effective date of the First Step Act's amendment to § 924(c)." 4 F.4th at 575. Subsequently, the Seventh Circuit extended this principle to nonretroactive judicial decisions. *See King*, 40 F.4th at 595 ("There's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255.") These cases are binding upon this Court, and they indicate that the Seventh Circuit is likely to invalidate § 1B1.13(b)(6) insofar as it allows nonretroactive changes in law to serve as a basis for compassionate release. Insofar as the Court must choose between the Sentencing Commission's and the Seventh Circuit's interpretations of § 3582(c)(1)(A)(i), the Seventh Circuit prevails. *See United States v. Uriarte*, No. 09-CR-332-4, 2024 WL 4111867, at *5 (N.D. Ill. Sept. 6, 2024) ("Fundamental principles of vertical *stare decisis* require district courts in the

13

Seventh Circuit to 'follow the decisions of the [Seventh Circuit] whether or not they agree.") (collecting cases).[3]

In finding that *Thacker* is controlling, insofar as subsection (b)(6) purports to allow consideration of nonretroactive changes in law, this Court is consistent with the majority of the district courts in the Seventh Circuit who have addressed this issue. *See United States v. Black*, __ F. Supp. 3d __, 2024 U.S. Dist. Lexis 20084, at *32 (N.D. Ill. Feb 6, 2024) ("[T]he Court concludes that the Seventh Circuit has interpreted 18 U.S.C. § 3582(c)(1)(A) to preclude a nonretroactive amendment to a statutory sentence from being considered an extraordinary and compelling reason to reduce a sentence. As the Seventh Circuit has construed that statute, the amended U.S.S.G. § 1B1.13(b)(6) is not a reasonable reading of § 3582(c)(1)(A)."); *United States v. Buggs*, 2:99-cr-86, 2024 U.S. Dist. Lexis 85855, at *9 (N.D. Ind. May 13, 2024) ("Respectfully, this Court agrees with the *Black* court that, in light of its holding in *Thacker*, the Seventh Circuit is likely to find that the Sentencing Commission exceeded its authority in issuing § 1B1.13(b)(6). Accordingly, the Court finds that § 1B1.13(b)(6) does not serve as a basis for compassionate release, and denied defendants' request for relief based on this subsection."); *United States v. Williams*, Case No. 06-cr-20032, 2024 WL 3567498, at *5 (C.D. Ill. July 29, 2024) ("It is the Court's position that, while the Commission has the authority to promulgate policy statements and to include unusually long sentences as extraordinary and compelling reason for release, it cannot use § 1.B1.13(b)(6) as a vehicle to make the [First Step Act] statutory amendments retroactive where there is no evidence of such intent by Congress.");

---

[3] In *Uriarte*, the district court recognized the obligation to follow *Thacker*, rejecting the defendant's motion for compassionate release, even as it observed that it would not hesitate to follow the Sentencing Commission's § 1B1.13's policy statement had it the authority to do so, given "the gross disparity between Jorge's lengthy sentence and that of his more culpable co-defendants." *Id.* at *5.

14

*United States v. Owings*, No. 1:12-cr-3, 2024 WL 4171197, at *4 (S.D. Ind. Sept. 12, 2024) ("In *Thacker*, the Seventh Circuit provided a plain and unequivocal answer to the question of whether a statutory change 'can constitute an extraordinary and compelling reason for a sentencing reduction' by stating that '[i]t cannot.' The Court characterized its holding as answering that question 'squarely and definitively.' *Id*. This holding has been cited and relied upon by our circuit in numerous subsequent opinions, including those cases which encompass new judicial determinations as well as new statutory changes. Given these precedential determinations, we hold that § 1B1.13(b)(6) is contrary to statute and the Sentencing Commission's view to the contrary is not entitled to deference.") (citing *Thacker*, 4 F.4th at 576; Brock, 39 F.4th at 466; and *United States v. King*, 40 F.4th at 595).

Although the Court is persuaded by the cases finding that *Thacker* is controlling, it also recognizes that the issue of the validity of subsection (b)(6) may be a close call, as reflected by the very thorough and well-written order in *United States v. Spradley*, No. 1:98-cr-38, 2024 WL 1702873, at *5 (S.D. Ind. Apr. 18, 2024), where a district court came to the opposite conclusion, which was followed by *United States v. Smith*, No. 06-30072, Doc. 43 (C.D. Ill. May 1, 2024). The Court is also mindful of the recent cases in which the Circuit has distinguished the elements of the guideline from the facts of the individual case, rather than simply observe that the guideline is of no force. *See United States v. Moore*, No. 23-2919, 2024 WL 890003, at *1 (7th Cir. Mar. 1, 2024) (unpublished) (noting that § 1B1.13(b)(6) permits some defendants to seek early release based on intervening changes in constitutional or criminal law but foregoing any further discussion because the defendant had not yet served at least 10 years of his sentence); *United States v. Williams*, No. 23-1929, 2023 WL 8868502, at *1 n.1 (7th Cir. Dec. 22, 2023) (unpublished) ("We acknowledge that the Sentencing Commission's proposed amendments to

15

the Guidelines took effect on November 1, 2023. As relevant to [the defendant's] motion, U.S.S.G. § 1B1.13(b)(6) permits courts to consider a change in the law when, among other considerations, the defendant has served more than 10 years of his sentence. But because [the defendant] has not served more than 10 years, the new guideline does not alter our analysis here."). It remains to be seen whether those cases are a signal of change to come and a departure from *Thacker*.

Having settled that nonretroactive changes in law are not extraordinary and compelling reasons for reducing a sentence, the Court finds that Mr. Duncan has failed to show that *Alleyne*, *Dean* and *Borden* mandate a reduction of his sentence. None of the three cases are retroactive, *see Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) (holding that *Alleyne* was not made retroactive); *Worman v. Entzel*, 953 F.3d 1004, 1010 (7th Cir. 2020) (holding that *Dean* is not retroactive); *Miller v. Williams*, 2022 U.S. Dist. LEXIS 135616, *5 ("The Supreme Court gave no indication that its decision in *Borden* should be given retroactive application to a case on collateral review . . . ."), so they cannot serve as extraordinary and compelling reasons for a sentence reduction. *See Thacker*, 4 F.4th at 574 ("[T]here is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violation of a statute.").

### (4) *Duncan's Rehabilitation and Individualized Circumstances*

Mr. Duncan cites his rehabilitation and individualized circumstances as an extraordinary and compelling reason for release. The Guidelines permit a prisoner to raise "any other circumstances or combination of circumstances" in determining the gravity of his reasons for release. § 1B1.13(b)(5). Mr. Duncan has completed 35 education courses and works as a

recreation orderly. He argues that his age and maturity have positioned him to be a contributing member of society, and that because he has been discipline-free for nineteen years and assessed by the Bureau of Prisons as having a "Minimum" risk of recidivism, he is no longer a threat to the public. Indeed, Mr. Duncan is to be commended for his many achievements during his incarceration. He also cites his job skills and family support, including the offer of employment and housing, as a positive plan for reentry.

However, his rehabilitation and family support in this instance are not "similar in gravity" to those circumstances referenced in §§ 1B1.13(b)(1), (b)(2), (b)(3) and (b)(4). Moreover, here, rehabilitation, even along with his family support, would not constitute an extraordinary and compelling reason for release. *See* 28 U.S.C. § 994(t); § 1B1.13(d); *cf. United States v. Peoples*, 41 F.4th 837 (7th Cir. 2022). As a result, these circumstances do not warrant his early release.

### D. Conclusion

For these reasons, the Court concludes that Mr. Duncan has not established an extraordinary and compelling reason and DENIES his motion for compassionate release or reduction in sentence (DE 312). As a result, the Court need not address the 3553(a) factors.

SO ORDERED.

ENTERED: October 10, 2024

                                                 /s/ JON E. DEGUILIO  
                                                 Judge  
                                                 United States District Court